## *In re* HILDITCH'S ESTATE.

1. WILLS—JOINT SIGNATURE OF WITNESSES—SIGNATURE OF TESTATOR.
   Whether or not the joint signature of a husband and wife as attesting witnesses of purported will constituted a sufficient compliance with statute as to attestation of a will, need not be determined where finding that the document was not signed by the testatrix is sustained by the evidence (CL 1948, § 702.5).

2. SAME—EXECUTION—SCRIVENER.
   Finding of circuit court to which will contest had been certified and which was heard without a jury that the person who signed the instrument as a witness wrote the entire instrument and that testatrix had not executed it as claimed by proponent *held,* not against the clear weight of the evidence.

Appeal from Ottawa; Miles (Fred T.), J. Submitted October 12, 1949. (Docket No. 6, Calendar No. 44,158.) Decided January 9, 1950.

In the matter of the estate of Kathryn Hilditch, deceased. Helen F. Murphy presented purported

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error, § 823.
[1, 2] 57 Am Jur, Wills, §§ 896, 900, 994.

last will and testament for probate. Charles Hilditch objected thereto. Contest certified to circuit court. Judgment for contestant. Proponent appeals. Affirmed.

*Frank J. Powers,* for proponent.

*Louis H. Osterhous,* for contestant.

BUTZEL, J. Kathryn Hilditch died July 15, 1946, leaving as heirs Charles Hilditch, her husband, of Ferrysburg, Ottawa county, Michigan, and Helen F. Murphy, her sister, of Decatur, Illinois. The latter as proponent filed a petition in the probate court for Ottawa county to probate a document as decedent's last will. Upon the petition being opposed by Mr. Hilditch as contestant, the proceedings were certified to the circuit court for Ottawa county. The trial court, sitting without a jury and after taking of testimony, filed an opinion followed by an order having the effect of a judgment denying the allowance of the purported document as the last will of decedent. Proponent appeals.

Mr. and Mrs. Hilditch lived at Ferrysburg and had been married 28 years prior to her death. They owned property in Ferrysburg as well as in other places in their joint names. Decedent evidently owned an interest in property in her own right and according to the purported will, which is dated July 1, 1946, she left her share of property she owned in Muskegon, Michigan, together with insurance and a personal bank account in Grand Haven, Michigan, to her sister Helen F. Murphy, the proponent. She made the further statement in her will that if she died before fall the strip of land now being rented by Mr. and Mrs. Stanley Nyquist on Pine street, Ferrysburg, was to be sold to them at a reasonable price; that Dorothy Nyquist had taken care of her

and had lived on the property. She also provided that her husband, Charles Hilditch, should have half of the property in Ferrysburg and $1. However, it appears that the property in Ferrysburg was held in the joint names of Mr. and Mrs. Hilditch so that Mr. Hilditch as survivor became sole owner of the property. There was written at the bottom of the purported will the word "Signed," followed by the signature "Cathyrn Hilditch." Below this signature but to the left thereof, there appears the following: "Mr. and Mrs. Stanley Nyquist, Witness."

Mr. and Mrs. Nyquist lived in a house in the rear of the Hilditch home. A short distance from the Hilditch home and, also, on the same lot, Mr. and Mrs. Nyquist ran a small lunch stand. Mrs. Nyquist was a practical nurse and Mr. Nyquist had been a foreman in a shop in Muskegon for many years. Mrs. Hilditch's health was very poor. She had worked a large part of her married lifetime in her husband's place of business, had taken care of his books and evidently was a woman of some education. She had been sick for some time prior to her death and Mrs. Nyquist would stop at her home and assist her. They evidently became very good friends. Mrs. Hilditch, however, was not bedridden and was able to attend to many household duties without any help until she was stricken with a cerebral hemorrhage which caused her death very shortly thereafter. Mrs. Nyquist claims that Mrs. Hilditch called her and Mr. Nyquist into the house the day that the purported will was signed and after asking them to sign as witnesses, she executed the instrument and then told Mrs. Nyquist that she could sign the name of Mr. and Mrs. Stanley Nyquist for both herself and husband while Mr. Nyquist touched the pen as Mrs. Nyquist wrote the signature "Mr. and Mrs. Stanley Nyquist." In this way, it is claimed that the signature bears the 2 names of Mr. and Mrs.

Nyquist and that he actually touched the pen so that it is his signature and that it thus meets the requirements of CL 1948, § 702.5 (Stat Ann 1943 Rev § 27.3178 [75]), which provides:

"No will made within this State * * * shall be effectual to pass any estate * * * unless it be in writing and signed by the testator or by some person in his presence, and by his express direction, and attested and subscribed in the presence of the testator by 2 or more competent witnesses."

The trial court held that this one joint signature was insufficient to meet the requirements of the statute. Counsel for contestant-appellee states that after diligent search he has been unable to find any similar case, nor have we after some research on our part. There is no question that this method of witnessing a will is careless and leads to difficulties such as appear in this case. We need not decide the question of its sufficiency to meet the requirements of the statute, inasmuch as the judge further found that the will was never signed by Mrs. Hilditch. In coming to this conclusion the judge reviewed some of the testimony. Mr. Hilditch testified that he interviewed Mr. Nyquist shortly after he learned of the existence of the instrument and that Mr. Nyquist stated that he never was present when such a will was signed. On cross-examination Mr. Nyquist did not categorically deny that he had made this statement but only would say that he did not remember making it, but that when he was further questioned, he stated that in his conversation with Mr. Hilditch he "just evaded the issue." A large number of genuine documents, including letters, receipts, checks, signature cards, et cetera, were introduced to show Mrs. Hilditch's handwriting. A teacher of penmanship who was also a certified public accountant testi- fied that he had frequently appeared in courts as a

handwriting expert, that he had made comparisons between the contested document and the genuine handwriting of Mrs. Hilditch and found many traces of similarity in many of the letters of the alphabet that were used. He, however, did not discuss the dissimilarities that also appear patent on examination of the documents. He claimed that a resemblance or lack of resemblance was not significant as the personality of the writer which he found in the exhibits and particularly the deviation from standard forms showed the habit of the writer. Mrs. Hilditch's signature on a mortgage, on a land contract, and on confirmation of property sale all show that she spelled her name "Kathryn Hilditch" written in bold and plain letters. Helen F. Murphy, the sole proponent, stated that her sister at times also used . the name "Cathyrn" spelled in that manner. The witness was unable to produce any documents of any kind showing such practice. Attorney for contestant-appellee calls our attention to very many differences between the genuine writing of decedent and that in the purported will. It would serve no useful purpose to discuss each one of them. During the progress of the trial Mrs. Nyquist was asked to sign the name of Kathryn, whereupon she wrote "Cathyrn."

The trial judge discussed the exhibits. He found that the instrument was not signed by decedent. He stated that the person who witnessed the instrument wrote the entire instrument. Mrs. Nyquist testified that after the alleged execution of the purported will, Mrs. Hilditch told her that she would hide it in the lining of a coat pocket where after her death Mrs. Nyquist should get it and give it to Helen Murphy. Shortly after Mrs. Hilditch's death an investigator approached Mr. Hilditch on behalf of proponent with a proposition that they compromise their differences. The trial judge held that:

"The court is convinced that the person who signed this instrument as a witness wrote the entire instrument.

"Moreover, the method by which the purported will was executed and hidden and later found by Mrs. Nyquist; the activities of a 'detective', and the attitude of both Mr. and Mrs. Nyquist on the witness stand, as well as their testimony, are all convincing that Mrs. Hilditch did not execute this instrument as claimed by these witnesses."

We cannot agree with appellant's claim that the findings of the trial judge are against the clear weight of evidence. We, therefore, affirm the judgment, with costs to appellee.

BOYLES, C. J., and REID, NORTH, DETHMERS, CARR, BUSHNELL, and SHARPE, JJ., concurred.